**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ANTHONY COHEN             *

Plaintiff                   *

v                         *        Civil Action No. WMN-15-1881

ASSISTANT WARDEN RICHARD MILLER   *
*et al.*
Defendants               *
                        ***

**MEMORANDUM**

Defendants filed a Motion to Dismiss or for Summary Judgment (ECF 20) in response to the above-entitled civil rights complaint.[1]  Plaintiff opposes the motion.  ECF 29.  The Court finds a hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons stated below, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

This Court directed counsel for Defendants to respond to Plaintiff's Motion for Extension of Time indicating that he was denied access to legal materials during the pendency of this case.  ECF 27.  Prior to receipt of that response (ECF 30), Plaintiff filed a response indicating he had received his legal materials.  ECF 28.  The issue regarding his alleged denial of legal materials is therefore moot and will not be addressed further.

**Background**

Plaintiff Anthony Cohen, a prisoner confined to North Branch Correctional Institution ("NBCI"), alleges that on March 7, 2014, he was given a "false infraction" to cover up a "malicious and brutal attack" on Cohen by correctional officers.  The assault was the subject of a prior case filed by Cohen in this Court.  *See Cohen v. Wexford Health Source, et al.*, Civil Action

---

[1]      Plaintiff filed a Motion for Appointment of Counsel.  ECF 32.  In light of the fact that this case will not proceed to trial, that motion will be denied.

WMN-14-1850 (D. Md.). [2]  He states that Officer Shawn Murray came to the isolation cell where Cohen was being held, told him he had an adjustment hearing, and then stated that Cohen would not be attending the hearing.  ECF 1 at p. 3.

On March 19, 2014, Cohen appealed the adjustment hearing decision to the warden, based on the refusal to allow him to attend the hearing.  In his appeal, Cohen states he never received a copy of the infraction[3] prior to the hearing date and that Officer Murray's comment regarding Cohen's behavior being the reason he would not be allowed to attend the hearing was unfounded.  ECF 1-1 at p. 2.  Cohen stated that at the time he was told he could not attend the hearing, he was sitting in his cell with a fever, high blood pressure, and a mild concussion.  *Id*. He further alleged that Murray was not an escort officer, nor was he involved in conducting adjustment hearings that day, so his presence at Cohen's cell constituted harassment.  *Id*.  Cohen claimed he could prove beyond a reasonable doubt he did not commit the assault had he been allowed to attend the hearing.  *Id*.   His appeal was denied by Assistant Warden Richard Miller on April 5, 2014. ECF 1 at pp. 3 – 4, *see also* ECF 1-1 at p. 12. Cohen appealed Miller's denial, to the Inmate Grievance Office ("IGO") on May 1, 2014. *Id*. at p. 4.

Cohen states he sent three letters to the IGO inquiring about the status of his appeal, dated July 15, 2014, August 4, 2014, and August 18, 2014.  Executive Director of the IGO, Scott Oakley, dismissed Cohen's appeal as untimely, maintaining the first correspondence received from Cohen was the letter dated August 18, 2014.  ECF 1 at p. 4.

Cohen appealed the IGO dismissal to the Circuit Court for Allegany County, alleging the dismissal was not valid because Cohen had "all returned letters of inquiry." ECF 1 at pp. 4 – 5 He states the letters were stamped received by the IGO on July 18, August 8, and August 25,

---

[2]         Cohen was appointed counsel in that case and the litigation is ongoing.
[3]         A copy of the Notice of Infraction is attached to the complaint.  ECF 1-1 at p. 7.

2014.  *Id.*, *see also* ECF 1-1 at pp. 15 - 20.  The Circuit Court affirmed the IGO's decision in an order dated June 4, 2015.  ECF 1-1 at p. 13.

Cohen states that in a similar case, Assistant Commissioner Randy Watson issued a memorandum  dated October 1, 2014, stating that an officer in a different case did not have the authority to decide that Cohen could not attend an adjustment hearing.  ECF 1 at p. 5, *see also* ECF 1-1 at pp. 21-23.

Cohen claims he has been housed in punitive segregation since 2013 based on false infractions for which he was not allowed to attend adjustment hearings.  He explains that segregation inmates are not allowed any of the amenities permitted in general population.  As relief he seeks ten thousand dollars in damages.  ECF 1 at pp. 5 – 6.

Defendants assert that Cohen refused to sign the receipt indicating he received a copy of the Notice of Infraction charging him with violation of rules 101 (assault or battery on staff) and 400 (disobeying a direct lawful order).  ECF 20 at Ex. 1 at pp. 2 – 4.  Cohen's refusal to sign the receipt was witnessed by Officers Marken and Shaffer.  *Id.* at p. 2; *see also* Ex. 3 at p. 2.

The adjustment hearing was conducted on March 11, 2014, by hearing officer La'Tricia Taylor.  ECF 20 at Ex. 4.  Defendants assert that Cohen was heard in absentia "because he was on staff alert due to his assault upon the officers."  *Id.* at p. 8, Ex. 3 at p. 8, Ex. 5, p. 2, Ex. 6, p. 2. Defendants maintain that Cohen did not appeal the Warden's decision finding him guilty to the IGO until August 25, 2014.  *Id.* at Ex. 4, pp. 12 – 13.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### Analysis

Exhaustion of Administrative Remedies

Defendants raise the affirmative defense of non-exhaustion and assert Plaintiff's claim was not properly presented through the administrative remedy procedure and must be dismissed pursuant to 42 U.S.C. § 1997e.  ECF 20.  The Prisoner Litigation Reform Act (PLRA) provides, in pertinent part:

(a) Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to the general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (2006); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

5

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Thus, Cohen's claims must be dismissed if Defendants raise the affirmative defense and also prove that he has failed to exhaust available remedies.  *See Jones*, 549 U.S. at 216–17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints).  The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Cohen's presentation of letters marked received by the IGO inquiring about the status of his appeal from the adjustment hearing held in this case does not refute that no appeal was received by the IGO; rather, it simply establishes the IGO received letters from him inquiring about the appeal along with other matters he filed with that office.  ECF 29-2 at pp. 16 – 21. Notwithstanding that fact, this Court finds there is a genuine dispute of material fact regarding whether Cohen's attempt to exhaust administrative remedies was thwarted by circumstances outside of his control and will reach the merits of his claim herein.

### Due Process Claim

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such

proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 592. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539); *Wilkinson v. Austin*, 545 U.S. 209, 210 (2005).  Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . . fact specific" comparative exercise.  *Beverati v. Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting *Sandin*, 515 U.S. at 483-84); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . . requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)). "*Wilkinson* does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection."  *Prieto v Clarke*, 780 F.3d 245, 250 (4th Cir. 2015).  Rather, there must exist an interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations *combined with* . . . . harsh and atypical conditions" for due process protections to apply.  *Id.* (emphasis in original) (citing *Wilkinson*, 545 U.S. at 224-25).

"[G]eneral population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence."  *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015).  Where, as in *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997), conditions in segregated confinement are "similar in most respects to those experienced by inmates in the general population," no liberty interest exists in avoiding that segregation assignment.  *Beverati*, 120 F.3d at 503.  Where an inmate is sentenced to death row, as in *Prieto*, "using the general population to gauge the ordinary incidents of prison life  . . . . was improper."  *Incumaa*, 791 F.3d at 528 (citing *Prieto*, 780 F.3d at 252-54).   While the nature of a prisoner's conviction and the length of his sentence

do not give rise to differing liberty interests, "state law mandates regarding the confinement conditions to be imposed on offenders convicted of a certain crime and receiving a certain sentence are, by definition, the ordinary incidents of prison life for such offenders." *Id*. (quoting *Prieto*, 780 F.3d at 254).

Cohen's claim is based on the denial of prior written notice of the charges against him and the denial of his right to attend the hearing, which also impacts his right to call witnesses in support of his defense.  Cohen denies refusing to sign the receipt for the infraction and maintains he was so ill at the time he "could not even stand up without falling" due to his high blood pressure, fever, and concussion.  ECF 29-1 at p. 7.  Cohen further asserts that there is nothing describing *how* he presented a threat to the safety and/or security of the staff or institution.  *Id*. at p. 9.

Documents presented by Defendants indicate that Cohen's refusal to sign the receipt on the Notice of Infraction was witnessed by two officers who are not named as Defendants in this case and that, despite his refusal, he was provided a copy of the infraction.  ECF 20 at Ex. 3, p. 2.  Additionally, this Court notes that Cohen included a copy of the Notice of Infraction with the complaint.  ECF 1-1 at p. 7.  While it is not possible to determine when Cohen came into possession of the notice, this Court is mindful of the conundrum posed to correctional officials when faced with a situation where a prisoner refuses to acknowledge receipt of a document.

Defendants rely upon Cohen's assignment to staff alert status as the basis for conducting his hearing in absentia.  The "Staff Alert Designation Notice" states that Cohen was being placed on Staff Alert on March 7, 2014, because "he has demonstrated by his actions that he is a substantial security threat to the institution, staff or other inmates."  ECF 20 at Ex. 2, p. 3.  It further provides that the status must be reviewed after 24 hours; the inmate must remain on staff

alert if he "cannot be removed" based on a review; and must be reviewed again after five days, at which time the inmate may be either continued or removed from staff alert. *Id.* The comment provided on the notice states, "[i]nmate covered his cell window. Staff conducted a wellness check. As the cell door came open, Inmate Cohen charged toward staff causing a Use of Force." *Id.*

Cohen's record of segregation confinement for March 2014, provides a chart to document daily behavior as good (G), fair (F), or poor (P). ECF 20 at Ex. 2, p. 4. Cohen's daily behavior was rated as fair for March 7 – 13, 2014; rated as poor on March 14 and 15, 2014; and rated as fair for the remainder of the month. *Id.* The daily log indicates that Cohen refused to follow staff alert procedures to receive his meal on March 8, 13, 14, 15, and 17, 2014. *Id.* at p. 5. Specifically, Cohen refused to get on his knees at the back of his cell while his meal was delivered. *Id.* Thus, while Cohen is correct that the documents relating to the decision to hear his infraction in absentia do not include a lengthy explanation as to how he presents a security risk, his placement on staff alert status, along with the record of his segregated confinement depicting repeated refusals to follow orders, supports the finding that he presented a threat to the security of the institution and the safety of the staff. The Court finds on this record that the exclusion of Cohen from the adjustment hearing was warranted by legitimate security concerns.

Cohen's penalty did not include the loss of good conduct credits, but required Cohen to serve 365 days of disciplinary segregation, suspension of visiting privileges indefinitely, and 30 days of cell restriction. ECF 20 at Ex. 3, p. 9; Ex. 4, pp. 9 – 10. Defendants assert that the primary differences between segregation and general population housing at NBCI are that segregation inmates are: handcuffed or shackled whenever they are outside of the housing area; generally only permitted one-hour a day out of their cells; limited to two showers per week; and

only permitted to buy commissary items from an approved list of items with a $35 spending limit.  ECF 20-1 at p. 19, *citing* DCD 110-6 §VI(C), (D), and (H); NBCI.ID.110.0006.1 at p. 5.

Cohen describes the differences between general population and segregated confinement in more detail.  He states that in general population inmates are allowed: six showers per week, participation in religious services, participation in educational, vocational, and self-help programming, to order Commissary without limitations, access to the library, ordering of packages, to own personal property such as televisions, radios and CD players, to eat regular size meals in the cafeteria, recreation with other inmates, and to participate in all special events.  ECF 29-1 at p. 22.

By contrast, Cohen states that while housed on the Special Management Unit he is confined to a cell 24 hours a day on non-recreation or non-shower days and on days he receives recreation he is only allowed out for an hour and the shower he receives is 15 minutes long.  *Id*. at p. 21.   Prior to leaving his cell on segregation Cohen is subjected to a strip search requiring him to move his genitals and display his anus to the officer at the door and is then handcuffed behind his back even when he is leaving for a shower.  *Id*.  He further alleges that he is served smaller portions of food which he is required to eat inside of his cell.  *Id*.  He claims that the other inmates in the Special Management Unit scream and yell all night long and regularly throw feces at Cohen through the crack of the cell doors.  *Id*. at p. 22.  He claims that when flooding of the tier with feces and urine that runs into his cell occurs, he is not given disinfectant to clean the cell or provided with "blood spill workers" to clean it.  *Id*.  Cohen adds that he "had to clean this biochemical waste with the soap that was allotted to him with his hands or live with this bio-waste in the cell."  *Id*.  He concludes that there is no other housing unit at NBCI similar to the Special Management Unit.  *Id*.

To the extent much of the conditions noted by Cohen are due to the misbehavior of other inmates, those are not conditions imposed by correctional officials.  Indeed, it stands to reason that such conduct is not encouraged, nor is it tolerated by security staff.  The remaining conditions regarding lack of programming, restraints, and searches, are not conditions that are significantly atypical.   Security measures, withdrawal of participation in programs, and limitations on allowable property or freedom to move within the institution, are all conditions within the ambit of expected conditions of confinement following conviction of a criminal offense.   Thus, Cohen's confinement to segregation does not implicate a liberty interest and Defendants are entitled to summary judgment in their favor.

A separate Order follows.


 July 5, 2016                                              /s/                                  
Date                                             William M. Nickerson
                                                 Senior United States District Judge
.